UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re: :
 :
 : Case No. 14-43649-CEC
YOSI SHEMTOV, :
 : (Chapter 11)
 Debtor. :
-------------------------------------------------------- x

## OBJECTION OF THE UNITED STATES TRUSTEE TO
## THE DEBTOR'S DISCLOSURE STATEMENT

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), hereby files his objection (the "Objection") to the Debtor's Disclosure Statement. For his Objection to the Disclosure Statement, the United States Trustee represents and alleges as follows:

**I.    INTRODUCTION**

Yosi Shemtov (the "Debtor") has been in chapter 11 since July 2014. Yet he filed a Disclosure Statement and Plan only after the court recently ordered him to do so and he bases the Plan on alleged loan modifications that he did not begin negotiating until 2015. The Disclosure Statement does not contain adequate information as required under 11 U.S.C. § 1125 and the Plan is facially unconfirmable. The Disclosure Statement does not show that the Plan is feasible. The Plan improperly places secured creditor deficiency claims in separate classes and treats these claims less favorably than the claims of other unsecured creditors. The Plan fails to include a class of equity interests and the discussion of the absolute priority rule in the Disclosure Statement is inadequate. For these reasons, the Court should deny approval of the Disclosure Statement.

1

**II.    FACTS**

    **A.    The Debtor**

Yosi Shemtov (the "Debtor") filed an individual chapter 11 case (the "Current Case") on July 17, 2014 (the "Petition Date"). ECF Doc. No. 1. On March 16, 2015, the Court entered a scheduling order, directing the Debtor to file a disclosure statement and plan on or before April 10, 2015 (the "Scheduling Order"). ECF Doc. No. 34. The Scheduling Order also provides that the case may be subject to dismissal if the Debtor fails to comply with its terms. *Id*. The Debtor filed the Disclosure statement and Plan on May 12, 2015, more than a month after the deadline set by the Court and after the United States Trustee filed his Motion to Dismiss or Convert Case to Chapter 7 under 11 U.S.C. § 1112(b) May 11, 2015. ECF Doc. Nos. 40, 42, and 43.

This is the second chapter 11 case that the Debtor has filed in Brooklyn. On May 22, 2009, the Debtor filed Case No. 09-44229 (JF) (the "2009 Case"). On April 9, 2010, the Court entered an order directing the Debtor to file a disclosure statement and plan by June 15, 2010, or face dismissal of the 2009 Case (the "Bar Date Order"). ECF Doc. 40. The Debtor did not comply with the Bar Date Order and the Court entered an order dismissing the 2009 Case on July 8, 2010. ECF Doc. No. 42.

    **B.    Assets and Liabilities**

The Debtor listed seven rental real properties and his residence on Schedule A (the "Properties"), with an aggregate value of $4.355 million. *See* Schedule A, filed on the Petition Date. The value of the Properties and the mortgage liens encumbering them, as set forth in Exhibit D to the Disclosure Statement and Schedule D, are as follows:

2

| Property | Type | Value (Ex. D) | 1st Lien | 2nd Lien |
|---|---|---|---|---|
| 132-82 70th Avenue "70th" | Residence | $680,000.00 | $863,000.00 | $63,000.00 |
| 86-80 Midland Pkway "86-80" | Rental | $875,000.00 | $900,000.00 | $139,000.00 |
| 86-82 Midland Pkway "86-82" | Rental | $850,000.00 | $1,000,000.00 | $134,000.00 |
| 86-84 Midland Pkway "86-84" | Rental | $850,000.00 | $1,219,511.62 | $0.00 |
| 86-86 Midland Pkway "86-86" | Rental | $875,000.00 | $612,000.00 | $143,000.00 |
| 3-27 125th Street "125th" | Rental | $447,606.00 | $600,000.00 | $0.00 |
| 391 Van Siclen "Van Siclen" | Rental | $349,272.00 | $404,000.00 | $0.00 |
| 100-21 39th Avenue "39th" | Rental | $432,822.00 | $800,000.00 | $61,000.00 |

Wells Fargo holds the first mortgage encumbering 70th, 86-80, 86-82, 86-84, 86-86. Ocwen holds all of the second mortgage liens as noted in the chart above, and America's Servicing holds first mortgage liens on 125th, Van Siclen and 39th. *See* Schedule D and Exhibit D to the Disclosure Statement.

The Debtor listed personal property with a value of $74,000.00, comprising cash, a life insurance policy, clothing, jewelry, and an ownership interest in a corporation. *See* Amended Schedule B, filed on September 10, 2014, ECF Doc. No. 23. The Debtor did not schedule any priority or general unsecured creditors. *See* Schedules E and F.

### C.     Income and Expenses

According to the Debtor's April 2015 Monthly Operating Report ("MOR"), he received rent revenue of $19,075.00 in April 2015 from 86-80, 86-82, 86-84, 86-86 and 70th. ECF Doc. No. 47. Since the Petition Date, the Debtor has received rent revenues of $216,189.00 from these Properties. *See* Individual Debtor Cash Receipts and Disbursements. In April 2015, the Debtor's total revenues were $23,532.00 from rent, parking and dividends, or $256,368.00 since the Petition Date. *Id*. Expenses for April 2015 totaled $16,927.00 ($137,655.00 since the Petition Date), for net cash flow of $6,604.00 and $118,062.00, respectively. The Debtor has made no payments to his secured creditors since the Petition Date and upon information and belief, he has not made any payments to secured creditors since 2008. The Debtor has disbursed

$2,719.00 for repairs and maintenance since the Petition Date. The Debtor had $88,000.00 in cash on April 30, 2015. *Id*.

  **D.** **The Disclosure Statement and Plan**

The Plan calls for thirteen classes of creditors. *See* Disclosure Statement, at 8-15. Classes 1, 3, 5, 6, and 8 comprise Wells Fargo's first mortgage liens. *Id*. The treatment of Wells Fargo in each class is similar. The basis for valuation of the claims is either the scheduled value or the value set forth in Wells Fargo's proofs of claim. To date, Wells Fargo has filed secured claims with respect to 70th and 86-84. *See* Claims Register, Claims 7-1 and 8-1. As to treatment, for a period of 30 years from the Effective Date, the Debtor proposes to pay Wells Fargo approximately half of its claim, in monthly installments, amortized over 40 years. *Id*. At the end of 30 years, the Debtor will pay the remaining principal, plus accrued interest. *Id*. Ocwen's claims, set forth in Classes 2, 4, 7 and 9, will be allowed in the scheduled amount and Ocwen will receive 5% of the allowed claim on the Effective Date, fully settling the claims and satisfying the second mortgage liens. *Id.* Classes 10, 11, and 12 call for the surrender of three Properties (Van Siclen, 39th, and 124th), encumbered by America's Servicing mortgage, in full satisfaction of its claim. *Id*. at 13-15. Class 13 comprises general unsecured claims, which are to receive 10% of their claims on the Effective Date. *Id.* at 15. Included in Class 13 is Ocwen's second mortgage lien claim on 39th. *Id.*

The Debtor intends to fund the Plan with rent revenues, salary, dividends, cash on hand, and miscellaneous sources of income. *Id.* at 4. The Plan is contingent on modification of Wells Fargo's loans, settlement of Ocwen's claims and the surrender of Van Siclen, 125th, and 39th to America's Servicing. *Id*. According to the Debtor, "[i]n 2015, the Debtor made modification

4

proposals to Wells Fargo . . . . Wells Fargo has asked for additional information to evaluate the proposed modification, and the Debtor has sent that information." *Id*. at 3.

### III. THE COURT SHOULD DENY APPROVAL OF THE DISCLOSURE STATEMENT BECAUSE IT DOES NOT SATISFY THE REQUIREMENTS OF 11 U.S.C. § 1125 AND THE PLAN IS FACIALLY UNCONFIRMABLE.

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125; *In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). A disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc*., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of disclosure is determined on a case-by-case basis, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

If a debtor's proposed plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied because soliciting votes on the plan would be futile. *Quigley,* 377 B.R. at 115 (citing *In re Beyond.com Corp*., 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *See also In re 18 RVC, LLC*, 485 B.R. 492, 495 (Bankr. E.D.N.Y. 2012) (the court should not approve a disclosure statement if the plan cannot be confirmed).

Here the Debtor's disclosure statement does not contain adequate information and on its face, the Plan does not meet the confirmation requirements of 11 U.S.C. § 1129. On both of

these bases, the Court should deny approval of the Disclosure Statement. The deficiencies in the Disclosure Statement and Plan include the following:

### A. The Debtor Has Not Demonstrated that the Plan is Feasible.

To confirm a chapter 11 plan, the Court must find that the plan is feasible under Section 1129(a)(11), which provides that the plan proponent must show that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor . . . ." *In re DBSD North America, Inc*., 634 F.3d 79, 106 (2d Cir. 2011) and 11 U.S.C. § 1129(a)(11). A feasible plan "must offer a reasonable assurance of success but it need not guarantee success." *DBSD*, 634 F.3d at 106.

A significant component of the Plan is modification of Wells Fargo's mortgages. Even though he has been in chapter 11 nearly a year, the Debtor did not broach the modifications with Wells Fargo until 2015, *see* Disclosure Statement, at 3, and it appears that the Debtor and Wells Fargo are nowhere near to reaching an agreement, documenting the agreement or seeking court approval. At best, the Debtor's proposed means of implementing the Plan is nascent, at worst, it is illusory.

### B. The Debtor Improperly Places Ocwen's Deficiency Claims in Separate Classes and Treats Ocwen's Claims Less Favorably than the Claims of Other Unsecured Creditors.

Claims placed into classes under a chapter 11 plan "must be substantially similar to the other claims in the class. . . . Thus, ordinarily substantially similar claims, those which share common priority and rights against the debtor's estate, should be placed in the same class." *In re Save Our Springs (S.O.S.) Alliance*, 632 F.3d 168, 174 (5th Cir. 2011) (citations and internal quotation marks omitted). Generally, deficiency claims of secured creditors are placed in the same class as other unsecured creditors. *In re Tucson Self-Storage, Inc*., 166 B.R. 892, 897 (9th

Cir. BAP 1994). Unless the debtor can articulate a business or economic justification for the separate classification of unsecured claims, the separate classification of deficiency claims is improper. *Id*. at 898.

According to the Debtor, Ocwen's second lien claims are fully unsecured. *See* Disclosure Statement, at 4. Yet, each Ocwen claim is in a separate class and it is to receive 5 percent of its allowed claim in full satisfaction of the debt, while members of the unsecured creditor Class 13 are to receive 10 percent and the only apparent member of that class is Ocwen on account of a claim on one of the surrendered Properties. *Id*. at 8-13. It is difficult to fathom the Debtor's reasoning for this classification scheme but it may be an attempt at gerrymandering. The Plan should place deficiency claims into Class 13.

### C. The Debtor Has Not Designated a Class of Equity Interests and Fails to Explain the Effect of the Priority Rule in the Context of the Plan.

Under the absolute priority rule, unless all impaired classes consent, a confirmable plan must either pay the dissenting class in full or provide that junior classes receive no distributions. *DBSD*, 634 F.3d at 94. If the plan calls for equity to retain or receive property when senior classes are not paid in full, equity "must make a fresh contribution in money or money's worth equal to the property it is to receive or retain under the plan. *Id*. (citation omitted). Otherwise, the plan will not be "fair and equitable" as required under 11 U.S.C. § 1129(b)(1). *Id.* The debtor must show that the contribution is "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the property that old equity is retaining or receiving." *BT/SAP Pool C Assoc., L.P. v. Coltex Loop Cent. Three Partners, L.P. (In re Coltex Loop Cent. Three Partners, L.P.),* 203 B.R. 527, 531–32 (S.D.N.Y.1996), *aff'd* 138 F.3d 39 (2d Cir.1998).

The Debtor generally discusses the absolute priority rule in connection with classification and treatment of claims.  *See* Disclosure Statement, at 15 (equity may not retain its interests unless creditors are paid in full, impaired creditors consent to the plan or a class votes for the plan, which has the same effect as consent).  The Debtor has not, however, discussed the absolute priority rule and its consequences with reference to plan confirmation.  *Id* at 15-18.  Moreover, he has failed to designate a class of equity interests or demonstrate the effect of the rule with respect to the Plan.

## V.    CONCLUSION

Based on the foregoing, the United States Trustee requests that the court deny approval of the Disclosure Statement.

Dated:  New York, New York
         June 10, 2015.

                WILLIAM K. HARRINGTON
                UNITED STATES TRUSTEE, REGION 2

                By:  */s/ Alicia M. Leonhard*
                    Alicia M. Leonhard  (al-9928)
                    Assistant United States Trustee
                    201 Varick Street, Suite 1006
                    New York, NY 10014
                    Phone: 212.510.0500
                    Facsimile: 212.668.2255
                    Email: Alicia.M.Leonhard@usdoj.gov